UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JILL SCHMIEDER,<br><br>                         Plaintiff,<br><br>     v.<br><br>SAFECO INSURANCE COMPANY OF ILLINOIS,<br><br>                         Defendant. | CASE NO. 2:15-01986-BJR<br><br>ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

      Plaintiff Jill Schmieder brings claims against her automobile insurance company, Safeco Insurance Company of Illinois (Safeco), alleging that Safeco wrongfully denied coverage for her injuries resulting from a collision with an uninsured motorist. Schmieder also brings claims for violation of the Insurance Fair Conduct Act, Consumer Protection Act, bad faith, breach of fiduciary duty, negligence, and estoppel. Both parties move for summary judgment. Because Defendant properly interpreted Washington law in concluding that Schmieder waived a higher level of uninsured motorist coverage, Defendant's motion is granted as to Plaintiff's claims based on breach of contract, the Insurance Fair Conduct Act, Consumer Protection Act, bad faith, breach of fiduciary duty, and negligence; and Plaintiff's Motion for Summary Judgment is denied. However, because a genuine dispute of fact exists with regard to Plaintiff's estoppel claim, Defendant's Motion is denied as to that claim.

I.      Factual and Procedural Background

The basic facts underlying the parties' motions for summary judgment are not disputed. Schmieder's contractual relationship with Safeco began in May 2003 when Schmieder's boyfriend, Jared Siamas, obtained insurance from Safeco for his Ford Escort. Because both Siamas and Schmieder were listed on the title to the car, both were listed as named insureds on the policy. When Siamas entered into the insurance agreement, he selected uninsured motorists (UIM) coverage at a level of $25,000—lower than his liability coverage of $500,000. He signed a waiver accepting the lower level of coverage. Schmieder did not sign a waiver. In 2005, Schmieder added her own vehicle to the policy.

On December 14, 2012, Schmieder was rear ended by an uninsured motorist. As a result of the accident, Schmieder was injured and required knee surgery. Schmieder opened a claim with Safeco, and adjuster Diana Ho was assigned to the claim. On September 30, 2014, Ho emailed Schmieder to inform her that her UIM bodily injury limit was $25,000—lower than her liability bodily injury limit—and that Washington law required her to sign a waiver when the limits are not the same. Ho asked Schmieder if she recalled signing a waiver. Ho informed Schmieder that Safeco was still investigating the matter and that she may have additional coverage, up to her liability bodily injury limit of $500,000. On October 30, Safeco informed Schmieder that the liability bodily injury limit of $500,000 would apply, because Safeco could not locate a signed waiver. On November 6, Ho informed Schmieder that Safeco had found a waiver signed by the policyholder, Siamas, and thus asked Schmieder to settle for $24,864, the remaining amount of the $25,000 UIM bodily injury limit under the policy, and to waive any further claims. After obtaining legal representation, Schmieder was eventually successful in obtaining a check from Safeco for $24,864 without an agreement to waive her claims.

On November 18, 2015, Schmieder filed this action in King County Superior Court, asserting claims based on breach of contract, violation of the Insurance Fair Conduct Act and Consumer Protection Act, breach of the duty of good faith and fiduciary duty, negligence, and estoppel. On December 18, 2015, Safeco removed the case to federal court. Both parties now move for summary judgment.

II.   Legal Standard

Federal Rule of Civil Procedure 56 instructs that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. Under this rule, for a case to survive summary judgment, there must be a dispute over facts that are central to the outcome of the case, and the nonmoving party must have enough evidence to allow a reasonable jury to find in her favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In making this evaluation, the Court must draw all justifiable inferences in favor of the nonmoving party. Id. at 255. This includes resolving factual disputes in favor of the party opposing summary judgment. Sierra Club Inc. v. C.I.R., 86 F.3d 1526, 1536 (9th Cir. 1996). The nonmoving party, however, must present evidence upon which a reasonable jury could find in his favor; "the mere existence of a scintilla of evidence" is not sufficient to advance the case to trial. Liberty Lobby, 477 U.S. at 266.

III.   Discussion

   A.   Validity of Waiver

Washington law requires automobile insurance policies to include coverage for damage and injury caused by uninsured motorists. See Wash. Rev. Code § 48.22.030. The statute instructs that uninsured motorist protection "shall be in the same amount as the insured's third

party liability coverage unless the insured rejects all or part of the coverage as provided in subsection (4) of this section." Id. § 48.22.030(3). Subsection (4) provides:

> A named insured or spouse may reject, in writing, underinsured coverage for bodily injury or death, or property damage, and the requirements of subsections (2) and (3) of this section shall not apply. If a named insured or spouse has rejected underinsured coverage, such coverage shall not be included in any supplemental or renewal policy unless a named insured or spouse subsequently requests such coverage in writing. The requirement of a written rejection under this subsection shall apply only to the original issuance of policies issued after July 24, 1983, and not to any renewal or replacement policy. When a named insured or spouse chooses a property damage coverage that is less than the insured's third party liability coverage for property damage, a written rejection is not required.

Id. § 48.22.030(4). "Named insured" is defined in the statute as "the individual named in the declarations of the policy and includes his or her spouse if a resident of the same household." Id. § 48.22.005. The parties contest whether a waiver by a named insured, in this case, Siamas, is effective as to all named insureds on the policy or as to only that individual.

The Court's analysis begins with the plain language of the statute. In re Welfare of K.M.M., P.3d 929, 943 (Wash. App. 2015). If statutory language can be read according to its plain meaning, the inquiry ends. Id. If, however, the statutory language is "susceptible to more than one reasonable interpretation, it is ambiguous." Filo Foods, LLC v. City of SeaTac, 357 P.3d 1040, 1048 (Wash. 2015). The Court must consider particular statutory provisions "within the context of the regulatory and statutory scheme as a whole." City of Seattle v. Swanson, 193 Wash. App. 795 (2016) (quoting ITT Rayonier, Inc. v. Dalman, 863 P.2d 64 (Wash. 1993)). Moreover, the Court must "construe the language according to the statute's evident intent and purpose." State v. A.M., 260 P.3d 229, 232 (Wash. App. 2011). In the absence of interpretation by the state court, this Court sitting in diversity jurisdiction "must predict how the highest state court would decide the issue using . . . decisions from other jurisdictions, statutes, treatises, and restatements as guidance.'" Strother v. S. California Permanente Med. Grp., 79 F.3d 859, 865

(9th Cir. 1996) (quoting <u>Arizona Elec. Power Coop., Inc. v. Berkeley</u>, 59 F.3d 988, 991 (9th Cir.1995)).

While the language of § 48.22.030(4) makes clear that "a named insured," in this case, Siamas, may waive coverage, the language provides no guidance as to whether such a waiver applies only to that individual or to all named insureds on the policy.  Nor have Washington appellate courts answered this question.  In <u>Hall v. Allstate Ins. Co.</u>, the Court of Appeals held, based on principles of community property, that a husband's waiver of UIM coverage bound his wife under the pre-1985 version of the statute, which unlike the current version, did not explicitly provide for spousal waiver.  770 P.2d 1082, 1084 (Wash. App. 1989).  The trial court had granted summary judgment to the insurer on the grounds that a waiver by one named insured was effective as to all named insureds, but, in ruling based on community property, the court found it unnecessary to consider the application of one individual's waiver to non-spouse named insureds.  <u>See id</u>; see also <u>Johnson v. Farmers Ins. Co. of Washington</u>, 117 Wash. 2d 558, 570, 817 P.2d 841, 847 (1991) (holding that ex-husband's waiver during marriage bound ex-wife, based on community property rules).  Thus, because the Court of Appeals declined to rule on the question at issue here, it one of first impression for Washington courts.

In the absence of binding precedent, the Court looks to other jurisdictions for persuasive authority.  <u>See</u> <u>Strother</u>, 79 F.3d at 865.  The Ninth Circuit, evaluating a similar Nevada UIM statute, held in an unreported opinion that waiver by a named insured bound another, non-related named insured on the policy.  <u>See</u> <u>State Farm Fire & Cas. Co. v. Repke</u>, 301 F. App'x 698, 699 (9th Cir. 2008).  In doing so, the court ratified the district court's notion that "if one insured can enter into a contract for the benefit of himself and others, then the others should be bound by the express limitations of that contract," noting that "[t]raditional agency principles support this

5

position." Id. at 699.  The Ninth Circuit cited the Restatement (Third) of Agency's guidance on ratification, which provides that "[a] person may not, by ratifying an act, obtain its economic benefits without bearing the legal consequences that accompany the act." Id. at 699 n.2 (citing Restatement (Third) of Agency § 4.07 cmt. b).

Other states' courts have reached similar conclusions based on principles of agency.  The Illinois Supreme Court, in finding that an insured could waive UIM coverage on behalf of his spouse reasoned that "it would be inconsistent to find plaintiff is covered under the terms of a policy which benefit her but is not bound by the terms which do not benefit her.  Plaintiff relied on her spouse to make decisions on her behalf in procuring automobile insurance; thus, she should be bound by those decisions." Messerly v. State Farm Mut. Auto. Ins. Co., 662 N.E.2d 148, 151 (Ill. 1996).  The Texas Supreme Court reached the same conclusion, noting that "[r]eason and public policy also dictate that the waiver of one named insured should bind the rights of other named insureds. If one insured is able to enter into a contract for the benefit of himself and others, then the other insureds should also be bound by the express limitations of that contract." Old American Co. Mut. Fire Ins. Co. v. Sanchez, 149 S.W.3d 111 (Tex. 2004).

In contrast, other state courts have concluded, based on the purpose of UIM statutes, that an insured's waiver is effective only as to that individual.  In so ruling, an Alabama appellate court noted that the UIM statute "should be strictly construed in accord with the general purpose of the enactment." Nationwide Ins. Co. v. Nicholas, 868 So. 2d 457, 461 (Ala. Civ. App. 2003).  Likewise, the Connecticut Supreme Court concluded that "[t]o permit the signature of one named insured to bind other, possibly uninformed, named insureds would circumvent the legislature's intent that the decision to reduce uninsured motorist coverage by consumers be an informed one." Nationwide Mut. Ins. Co. v. Pasion, 594 A.2d 468, 472 (Conn. 1991).

In choosing between these lines of reasoning, the Court is guided by the Washington Court of Appeal's reasoning in Hall. 770 P.2d at 1082. While recognizing the protective purpose of the UIM statute, the Hall court rejected the notion that this protective purpose overrides agency principles when determining the ambit of a UIM waiver. In considering the effectiveness of waiver by a spouse, that court reasoned:

> Why should the rejection of UIM coverage be treated any differently than any other provision of the insurance contract? [The insured] urges that RCW 48.22.030(4) manifests a strong public policy in favor of protection of injured persons through UIM coverage. It is true that the legislature provided special treatment for this term of the insurance coverage by requiring it to be specifically rejected. However, if the legislature wished to mandate UIM coverage, it could have done so. Nothing in the statutory language suggests any change in or restriction on the normal principles of agency and community property management when dealing with waivers of UIM coverage.

Hall, 770 P.2d at 1084. This language indicates that, while the legislature intended the statute to promote UIM coverage, it also intended that drivers be able to waive that coverage through an agent. Thus, in determining whether Schmieder is bound by Siamas' waiver, this Court must apply "normal principles of agency," and treat the UIM waiver the same as other contract provisions.

Agency principles, as explicated in Repke, indicate that Schmieder should be bound by the waiver signed by Siamas. 301 F. App'x at 699. In allowing Siamas to procure insurance on her behalf, Schmieder permitted Siamas to bind her with regard to all aspects of the insurance contract, including the waiver. Moreover, by continuing to pay insurance premiums and by seeking the benefit of the contract, Schmieder effectively ratified the contract, including the waiver. Schmieder "may not, by ratifying an act, obtain its economic benefits without bearing the legal consequences that accompany the act." Repke, 301 F. App'x at 699 n.2 (citing Restatement (Third) of Agency § 4.07 cmt. b). Because, through Siamas, Schmieder opted for a lower level of UIM coverage than that provided for in Wash. Rev. Code 48.22.030(3), she is not

entitled to increased levels of UIM coverage under her policy. Therefore, Defendant's motion for summary judgment is granted as to Plaintiff's contract claim.

### B. Insurance Fair Conduct Act, Consumer Protection Act, Bad Faith, Breach of Fiduciary Duty, and Negligence Claims

Plaintiff next alleges that Safeco's denial of her claim violated Washington's Insurance Fair Conduct Act (IFCA) and Consumer Protection Act (CPA), as well as the common law standard of reasonable care. IFCA provides an insurance policy claimant with a cause of action when an insurer unreasonably denies a claim for coverage. See Wash. Rev. Code § 48.30.015. If a court finds that an insurer has acted unreasonably, it may award the plaintiff actual damages, including attorneys' fees, as well as punitive damages. Id. Likewise, the CPA allows a plaintiff to recover damages to business or property if she can demonstrate the following elements: "(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; and (5) causation." See WPI 310.01; Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 719 P.2d 531, 537 (Wash. 1986). Because the Court has determined that Safeco's denial of Schmieder's claim for additional coverage was not improper or unreasonable, see Section III(A), *infra*, Schmieder's IFCA, CPA, bad faith, breach of fiduciary duty, and negligence claims also fail. Defendant's Motion for Summary Judgment on these claims is granted.

### C. Estoppel

Plaintiff also claims that she is entitled to payment of her claims under the doctrine of equitable estoppel. Equitable estoppel arises from the notion that "a party should be held to a representation made or position assumed where inequitable consequences would otherwise result

to another party who has justifiably and in good faith relied thereon." Kramarevcky v. Dep't of Soc. & Health Servs., 863 P.2d 535, 538 (Wash.1993). A claim based on estoppel requires the plaintiff to show: "(1) an admission, statement or act inconsistent with a claim later asserted; (2) reasonable reliance on that admission, statement, or act by the other party; and (3) injury to the relying party if the court permits the first party to contradict or repudiate the admission, statement or act." Schroeder v. Excelsior Mgmt. Grp., LLC, 297 P.3d 677, 684 (Wash. 2013). Because equitable estoppel is not a favored doctrine, the party asserting estoppel must prove each of its elements by clear, cogent, and convincing evidence[.]" Dombrosky v. Farmers Ins. Co. of Washington, 928 P.2d 1127, 1134 (Wash. App. 1996).

On September 30, 2014, Ho emailed Schmieder to inform her that Washington law "requires you to sign a waiver" when a policy's UIM limits are different from its liability limits, and to ask whether Schmieder recalled signing such a waiver. Silk. Decl, Ex. 10, Doc. No. 14-1, at 37. Ho informed Schmieder Safeco was continuing to investigate the matter and that she "may potentially have coverage" up to $500,000. Id. Schmieder underwent knee surgery two days later, on October 1. On October 30, Safeco notified Schmieder that Safeco was unable to locate a signed waiver for reduced UIM bodily injury limits and therefore would offer Schmieder coverage up to $500,000. See Silk. Decl., Ex. 14, Doc. No. 14-1, at 49. One week later, on November 6, Ho informed Schmieder that Safeco had located a waiver signed by Siamas, and thus would offer coverage only up to $25,000. See Silk. Decl., Ex. 15, Doc No. 14-2, at 2.

Schmieder argues that the positions taken by Safeco on September 30th and November 6th are inconsistent, because Ho's September 30th email suggested that Safeco would provide coverage up to $500,000 in the absence of a waiver personally signed by Schmieder, but on November 6th, Safeco denied coverage based on a waiver signed only by Siamas. Further, Schmieder asserts that

9

she relied on Ho's September 30th statement when she hired legal counsel and sought medical treatment for her injuries. Schmieder argues that because she knew that she had never personally signed a waiver, and Ho's email implied that Safeco intended to provide coverage up to $500,000 in the absence of a waiver, Schmieder could reasonably rely on Ho's statement in making financial decisions with the expectation that she would receive the higher level of coverage. Schmieder's interpretation of the September 30th email is supported by the fact that Safeco, on October 30th, took the position implied by the September 30th email, before reversing course days later. The questions of whether Safeco's statements were inconsistent and whether Schmieder's reliance on Safeco's representations was reasonable create a genuine dispute of fact. Construing the facts in favor of Schmieder, the Court concludes that a reasonable jury could find that she has met the elements of estoppel. As such, Defendant's motion for summary judgment on Plaintiff's estoppel claim is denied.

### D. Conclusion and Order

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED as to Plaintiff's claims based on breach of contract, the Insurance Fair Conduct Act, the Consumer Protection Act, breach of duty of good faith, breach of fiduciary duty, and negligence, as well as Plaintiff's request for attorney's fees. Defendant's Motion for Summary Judgment is DENIED as to Plaintiff's estoppel claim. Plaintiff's Motion for Summary Judgment is DENIED.

Signed this 29th day of July, 2016.

BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE